### BIER *et al. v.* KIBBE *et al.*

(*Supreme Court, General Term, Fifth Department.* March, 1889.)

1. FRAUDULENT CONVEYANCES—PROOF OF FRAUD—PROVINCE OF JURY.

Plaintiffs took a bill of sale of the goods of a debtor, executing an acknowledgment that it was to secure a debt of $957, and agreeing to return any surplus that might remain. No inventory of the goods was made. At the same time the debtor conveyed to plaintiffs by an absolute deed his interest in a certain lease for an expressed consideration of $200. Plaintiffs sold part of the goods for $950. Defendant, also a creditor of plaintiffs' debtor, attached part of the goods in plaintiffs' hands. On the trial the *bona fides* of the transfer to plaintiffs was questioned. *Held,* that the question of fraud should have been submitted to the jury.

2. SAME.

In such case it is pertinent, as bearing on the question of fraud, to prove the value of the leasehold interest conveyed to defendant.

Appeal from circuit court, Cattaraugus county.

Action by Isaac Bier and others against Cyrus Kibbe and another. The plaintiffs, merchants doing business in the city of Rochester, were the creditors of one Wetmore, who was a retail merchant doing business at Garfield, Pa. Their debt amounted to the sum of $957.86. On the 27th day of October, 1882, Wetmore executed an instrument by which he conveyed to them his entire stock of goods and groceries which he then had on hand; and at the same time, and as a part of the same transaction, the plaintiffs executed an instrument in which they acknowledged that the transfer of the goods was for the purpose of securing their debt; and after the same was paid, with expenses, they agreed to pay the balance to the said Wetmore, or any person he might name. The plaintiffs took immediate possession of the goods, and shipped a large part of them to Salamanca, in this state. The defendant Kibbe was also a creditor of Wetmore; and when the goods reached Salamanca the defendant Darrow, the sheriff of that county, attached a portion of the goods of the value of $266, on an attachment which Kibbe had procured and placed in the hands of the sheriff to be executed. This is an action of trover to recover the value of those goods. When the evidence was all in, the defendant requested to go to the jury upon the question whether the transfer by Wetmore to the plaintiffs was made with intent to hinder, delay, and defraud the creditors of Wetmore. They also ask to go to the jury upon all the questions presented by the issues, and which the proof tended to establish, which request was denied, and the defendants excepted, and thereupon the court directed a verdict in the plaintiffs' favor for the sum of $351.29, being the value of the goods, as stipulated by the parties at the time of the seizure, and with interest thereon to the time of the trial. The plaintiffs sold and converted into money all the goods excepting those seized by the sheriff on the attachment. At the time of the seizure Wetmore was the owner of the undivided one-half of the store building in which he carried on business under a lease running to himself and another. At the time the goods were transferred Wetmore made a conveyance of all his interest in the lease to the plaintiffs, which was absolute and unqualified on its face, expressing a consideration of $200, which was acknowledged to have been paid. The defendants made a motion for a new trial upon the judge's minutes, and from an order denying the same they appeal.

Argued before BARKER, P. J., and DWIGHT and MACOMBER, JJ.

*F. W. Kruse,* for appellants. *Hudson Ansley,* for respondents.

BARKER, P. J. · An error was committed on the trial in directing a verdict in the plaintiffs' favor. The plaintiffs' position is that the transaction between them and Wetmore was in legal effect a written pledge in the nature of a chattel mortgage to secure their indebtedness, which was fixed in the instrument at $957.86. They could not hold the property or the avails arising from a sale of the same for a greater sum. The other creditors of Wetmore could, by proper proceedings, in an action against him, secure a lien on the property subject to the plaintiffs' lien as security for their debts. This the defendant Kibbe secured by the levy made by the sheriff under his attachment. In this action the plaintiffs could recover as damages no greater sum than the balance of their debt after applying all sums derived from a sale of the property pledged or mortgaged. The evidence tended to prove that very soon after the plaintiffs took possession of the goods they realized by sales enough to pay their debt in full; at least that the amount remaining unpaid thereon, after deducting all expenses, was less than the amount of the verdict ordered by the court. It is admitted that they received from the sale of a portion of the goods, made to Wiseman, $700.

The evidence tended to prove that before the goods were shipped from Garfield they sold a portion of the goods included in the bill of sale, and derived therefrom $250. These two items paid the plaintiffs' debt within $7.86. We need not take further notice of the evidence with a view of showing that it was error to direct a verdict in the plaintiffs' favor for the value of the goods seized by the defendants, as a question was clearly made as to how much remained unpaid on the plaintiffs' debt secured by the transfer of the property. But there is evidence which would justify the jury in reaching the conclusion that it was intended by the parties that the transfer of the lease should be absolute, giving the plaintiff an unqualified title to the same, and if that was so, then, as between the parties to this suit, the price agreed upon for the transfer as expressed in the assignment should have been credited on the plaintiffs' demand, which would have overpaid their debt. The deed is absolute in terms, and conveys all of Wetmore's interest in the lease. Wetmore testified that the building was to be sold, and the proceeds to be applied on the debt the same as the other property. And Mr. Elyea, one of the plaintiffs who negotiated the arrangement with Wetmore, and who was a witness on the trial, was silent on this subject. Although Wetmore was called to the stand by the defendants, his statements are not conclusive against them on this question.

When this trial took place the pleadings had been amended so as to present the question as to the *bona fides* of the transfer, and the defendants contended that the same was made with intent to hinder, delay, and defraud the other creditors of Wetmore in the collection of their debts. If this was the aim and purpose of the parties to that transaction the plaintiffs would have no lien on the property which the law would uphold as against Wetmore's creditors. The evidence tended to prove fraud, and had sufficient probative force, as we think, to make a case for the consideration of the jury. The evidence tended to prove that the merchandise in the store and embraced in the transfer was worth $2,000. This value was placed on the stock by a witness who was a clerk in the store at the time the goods were delivered to the plaintiffs. Wetmore's interest in the lease, and the value of the same, was from $300 to $350, as the jury might have found from the evidence of the plaintiff Elyea. The plaintiffs never made any inventory—nor did Wetmore—of the stock of merchandise, as may be fairly inferred from the evidence; nor can it be determined from the proofs, the quantity or value of a single article except those seized by the sheriff. This is a very remarkable circumstance in view of the fact that both parties were merchants, and no attempt was made to explain the omission to do so, and tends to prove the averments set up in the defendant's answer that the transfer was fraudulent. The goods were, as the evidence

also tends to prove, carelessly packed when shipped from Garfield to Sala-
manca, and in such a manner as tended to depreciate their value, and this
also indicates that the plaintiffs, as well as Wetmore, were indifferent to the
amount which should be realized therefrom. Immediately after the papers
were executed, Wetmore left the place of his residence, and went into Canada,.
and remained there for a time. In all cases where an issue of fraud is raised,
and the evidence fairly tends to support the allegations, it is for the jury to
determine the questions, and the statute makes the question of fraud one of
fact to be determined by the jury.

We are also clearly of the opinion that it was pertinent for the defendant,
in support of his side of the case, to prove the value of the lease as a circum-
stance bearing on the question of fraud. The lease was transferred at the same
time the goods were delivered, and the transfer was demanded as a further
security, and the same formed a part of the same transaction. Wetmore dis-
tinctly stated as a witness that the lease was to be sold, and the proceeds to
be applied on the debt due the plaintiffs. It was as competent and pertinent on
the question of fraud to prove the value of the lease as it was the value of the
merchandise.

When this case was before this court on a former appeal (43 Hun, 174),
nothing was determined which supports the rulings made on the last trial, or
which is inconsistent with the views which we have expressed. The ques-
tion of fraud was not then in issue. An amended answer setting up fraud
in fact having been since waived, the plaintiffs had a perfect right to take
from Wetmore, their debtor, security for their debt; but, however just and
equitable the debt may be, if they and Wetmore entered into a scheme to
cheat and defraud, hinder and delay, the other creditors of Wetmore, the
transaction is void, and the seizure of the goods by the sheriff on the attach-
ment is fully justified. Judgment and order should be reversed, and a new
trial granted, with costs to abide the event. All concur.